UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RAY EUGENE WILCOX,

    Plaintiff,

v.

BARBER COLMAN COMPANY,

    Defendant.

No. 99-CV-125

MEMORANDUM OPINION AND ORDER
ON CROSS MOTIONS FOR SUMMARY JUDGMENT

BALDOCK, Circuit Judge[*]

    Plaintiff Ray Eugene Wilcox filed this action in New Mexico state court alleging, among other things, Defendant Barber Colman Company's breach of a "Consulting Agreement."[1] Defendant removed the action to federal district court on the basis of diversity of citizenship. See 28 U.S.C. §§ 1332(a) & 1441(a). Discovery completed,

---

    [*] Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit Court of Appeals, sitting by designation pursuant to 28 U.S.C. § 291(b).

    [1] In his complaint, Plaintiff alleges the following claims under New Mexico law: Count I--breach of contract; Count III--breach of the duty of good faith and fair dealing; and Count IV--prima facie tort. Count II requests a declaratory judgment as to the rights of the parties. For relief, Plaintiff's complaint requests monetary damages, prejudgment interest, punitive damages, and attorneys fees and costs. Plaintiff bases his motion for summary judgment solely on his breach of contract claim. In his opening brief in support of his motion, Plaintiff waives his claim to punitive damages, as well as any incentive-based compensation under the Consulting Agreement.

now before the Court are the parties' cross-motions for summary judgment. See Fed. R. Civ. P. 56. Summary judgment is proper if the record reveals no genuine issues of material fact for the fact-finder to resolve. Mitchael v. Intracorp, Inc., 179 F.3d 847, 856 (10th Cir. 1999). On cross-motions for summary judgment, the court may assume that the parties have submitted all relevant evidence; still, summary judgment is inappropriate if genuine issues of material fact exist. James Barlow Family Ltd. Partnership v. David M. Munson, Inc., 132 F.3d 1316, 1319 (10th Cir. 1997). For the reasons stated herein, the Court grants Plaintiff's motion for summary judgment and denies Defendant's motion for summary judgment.

## Background

The material facts in this case are undisputed. In 1988, Plaintiff incorporated DataTalk Development, a New Mexico corporation, as its sole shareholder. DataTalk devised, designed, and manufactured graphical user interface host software programs for application to energy management systems in buildings. Defendant, a corporate resident of Illinois, used hardware and software products in the manufacture of controls for the heating and ventilating systems of buildings. In June 1997, Defendant began investigating the possible acquisition of DataTalk. Plaintiff informed Defendant that he wished to sell DataTalk for around $6,000,000 after taxes. Defendant informed Plaintiff that Defendant could not pay beyond $3,000,000 without finding alternative sources of funding.

After further negotiations, the parties executed a "Letter of Intent" in August 1997,

providing for (1) the sale of DataTalk to Defendant and (2) Plaintiff's employment with Defendant. Combined, Plaintiff's remuneration under the sales agreement and employment contract would approach, and could exceed, based on performance incentives, $6,000,000–Plaintiff's initial asking price for DataTalk. On October 6, 1997, Defendant acquired DataTalk pursuant to a "Share Purchase Agreement" which provided for a maximum purchase price of around $4,500,000 gross. Following Defendant's purchase of DataTalk, the parties executed a "Consulting Agreement" in December 1997. The agreement between the parties provided in relevant part:

### CONSULTING AGREEMENT

> The Siebe Environmental Controls ("S.E.C.") division of the Barber Colman Company hereby agrees to use the services of Ray E. Wilcox ("Consultant") for the management and technical direction of the Development Engineering efforts of the group formerly operated as DataTalk Development Corporation. The following terms and conditions shall apply:
>
> 1. Term. This agreement shall become effective October 1st, 1997 and continue in effect until October 2nd, 2000.
>
> 2. Termination of Agreement. S.E.C. and Consultant shall have the right to terminate this agreement with or without cause, with the issuance of a 90 day written notice of termination. In the event of such termination, Consultant shall be entitled to receive from S.E.C. the remaining balance of the compensation terms outlined below unless the termination is for wilful misconduct.
>
> 3. Payment. For services rendered hereunder, S.E.C. shall pay Consultant the compensation set forth in the attached Schedule A, which is incorporated herein by reference.
>
> 4. Task Assignment and Effort. Consultant agrees to serve faithfully and exclusively to the best of his ability, energy, skill and

specialized knowledge in the execution of this agreement.

. . .

9. Entire Agreement. This agreement contains all commitments and major understandings between the parties hereto and with respect to the subject matter hereof and may not be modified except in writing and signed by Consultant and the duly authorized representative of S.E.C.

. . .

### SCHEDULE "A"

1. Annual compensation of $340,000, plus applicable New Mexico gross receipts tax, payable on a monthly basis.

2. Wilcox may earn an additional performance incentive of $152,000 for the first year for achieving certain performance goals. For the first year of the agreement, the goals are as set forth in page 2 of this Schedule "A". For the remaining two years of the agreement, Wilcox may earn an additional incentive of $100,000 per year for achieving certain performance goals. Barber-Colman and Wilcox will agree, in good faith, to suitable and reasonable performance goals regarding this performance incentive for the remaining two years.

Pursuant to the terms of the "Consulting Agreement," Defendant paid Plaintiff $340,000, plus applicable New Mexico gross receipts tax, during the first year of the agreement. Defendant also paid Plaintiff over $130,000 in performance incentives for the same time period. Thereafter, by letter dated November 4, 1998, Plaintiff gave Defendant ninety days notice of his intent to terminate under ¶ 2 of the "Consulting Agreement." When Defendant refused to pay Plaintiff his "annual compensation" for the remaining two years of the agreement, Plaintiff commenced suit.

Applicable Law

The parties have not addressed the choice of law question in this case. The "Consulting Agreement" is silent as to the governing law, and both parties cite New Mexico as well as Illinois case law to support their respective arguments. Because this case is pending in the New Mexico federal district court, New Mexico choice of law rules control. Coca-Cola Bottling Co. of Ogden, Inc. v. Coca-Cola Co., 4 F.3d 930, 933 (10th Cir. 1993). Under New Mexico choice of law rules, the applicable law for the interpretation of a contract is the law of the state where the final act necessary for the formation of the contract was performed. State Farm Mut. Ins. Co. v. Conyers, 784 P.2d 986, 991 (N.M. 1989). In New Mexico, a contract is formed at the place where the final signature is affixed. Id. The record in this case indicates that Plaintiff was the last party to execute the agreement by affixing his signature thereto on December 29, 1997, apparently in New Mexico. Accordingly, the Court proceeds on the basis of New Mexico contract law.

The law of contract interpretation in New Mexico is well established. In interpreting a contract upon a motion for summary judgment, the court must first decide if the contract is ambiguous. If the court ultimately determines that the contract is unambiguous, the court may construe the contract as a matter of law. C. R. Anthony Co. v. Loretto Mall Partners, 817 P.2d 238, 244 (N.M. 1991). If the court determines, however, that the contract is ambiguous, the fact-finder must resolve the question of ambiguity as a question of fact. Id. at 241. A contract is ambiguous when the

parties' expressions of mutual assent lack clarity.  Mark V., Inc. v. Mellekas, 845 P.2d 1232, 1235 (N.M. 1993).

If the court initially finds that the contract is unambiguous on its face, the parol evidence rule bars evidence of the circumstances surrounding the contract's formation to vary or modify the contract's terms.  C. R. Anthony, 817 P.2d at 241-42.  The parol evidence rule, however, does not bar the introduction of evidence to explain the contract's terms.  Without fully examining the circumstances surrounding the contract's formation, the court cannot properly answer the question of whether the contract is actually unambiguous.  Mark V. Inc., 845 P.2d at 1235.  Thus, the parol evidence rule does "not bar admission of evidence extrinsic to a written contract to determine the circumstances under which the parties contracted and the purpose of the contract."  C. R. Anthony, 817 P.2d at 242.

> [E]ven if the language of the contract appears to be clear and unambiguous, "a court may hear evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance," in order to decide whether the meaning of a term or expression contained in the agreement is actually clear.  The court is no longer restricted to the bare words of the agreement in interpreting the intent of the parties to a contract, but may also consider the context in which the agreement was made to determine whether the parties' words are ambiguous.

Mark V., 845 P.2d at 1235 (quoting C. R. Anthony, 817 P.2d at 243).

Under New Mexico law, "[a]ny determination of meaning or ambiguity should only be made in the light of the relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements

made therein." Restatement (Second) of Contracts § 212 cmt. b (1979) (cited with approval in C. R. Anthony, 817 P.2d at 243 n.3). If the evidence presented is so plain that a reasonable person could reach only one conclusion as to the meaning of the contract, then the court may construe the contract as a matter of law. But if the court determines that the contract, based upon its language, the inferences therefrom, and the surrounding facts and circumstances, is reasonably and fairly susceptible of differing constructions, an ambiguity exists for the fact finder to resolve. Mark V. Inc., 845 P.2d at 1235. Based both on its plain language and the circumstances surrounding its execution as reflected in the record, the Court concludes that the "Consulting Agreement" is unambiguous and may be construed as a matter of law.

## Discussion

Defendant argues that the plain language of the "Consulting Agreement" belies Plaintiff's contention that the parties intended the agreement as a mechanism for paying him additional sums for the sale of DataTalk regardless of whether Plaintiff actually performed any service for Defendant following the acquisition. Defendant points first to the "Consulting Agreement's introductory paragraph which provides that Defendant "hereby agrees to use the services" of Plaintiff. Defendant then turns to ¶ 3 of the agreement which states that "[f]or services rendered hereunder, [Defendant] shall pay [Plaintiff] the compensation set forth in the attached Schedule A." Finally, Defendant observes that under ¶ 4 of the agreement, Plaintiff agreed "to serve faithfully and exclusively to the best of his ability, energy, skill and specialized knowledge in the

7

execution of this agreement."

Undoubtedly the provisions upon which Defendant relies have meaning, for in construing the agreement, the Court must consider the entire contract and not just selected portions. Medina v. Sunstate Realty, Inc., 889 P.2d 171, 173 (N.M. 1995). While Plaintiff continued in Defendant's employ, he certainly was bound by all the terms of the agreement. But Defendant desires, in effect, to ignore ¶ 2 of the agreement which plainly addresses the consequences of the agreement's termination by either party:

> 2. Termination of the Agreement. [Defendant] and [Plaintiff] <u>shall have the right to terminate this agreement with or without cause</u>, with the issuance of a 90 day written notice of termination. In the event of such termination, [Plaintiff] <u>shall be entitled to receive from [Defendant] the remaining balance of the compensation terms outlined below</u> unless the termination is for wilful misconduct.

(emphasis added).

Schedule A provides for (1) "[a]nnual compensation of $340,000, plus applicable New Mexico gross receipts tax," and (2) "additional performance incentive[s] . . . for achieving certain performance goals." Plaintiff acknowledges that because he terminated the agreement (as was his right), he no longer is entitled to receive any incentive-based payments under the agreement. Relying on ¶ 2, however, Plaintiff claims he is entitled to the remaining balance of the $1,020,000 compensation which Defendant promised him together with the applicable New Mexico gross receipts tax. Plaintiff indicates that to date, Defendant has paid him "$453,333.32 of the $1,020,000 'compensation.'"

The Court agrees with Plaintiff. Under the terms of the "Consulting Agreement,"

Plaintiff, upon its termination by either party, was "entitled to receive from [Defendant] the remaining balance of the compensation terms," absent any wilful misconduct. Defendant has made no claim of wilful misconduct against Plaintiff. The agreement's language is perfectly clear as to the compensation to which Plaintiff is entitled upon the agreement's termination..

The circumstances surrounding the execution of the "Consulting Agreement" as reflected in the record support the Court's construction of the agreement. Defendant does not dispute that Plaintiff wanted $6,000,000 for the sale of DataTalk. Under the "Sales Purchase Agreement," however, Plaintiff received only about $4,500,000 for the sale to Defendant. Quite logically, Plaintiff sought to make up the difference between his asking price and the sale price by entering into the "Consulting Agreement."[2]

Finding nothing ambiguous in the terms of the "Consulting Agreement" or the circumstances surrounding its execution, the Court GRANTS Plaintiff's motion for summary judgment on his breach of contract claim and DENIES Defendant's motion for summary judgment. Because Plaintiff's claims against Defendant for breach of the duty of good faith and fair dealing, and prima facie tort, see supra, note 1, if either or both

---

[2] Defendant points out that on his federal income tax returns, Plaintiff has reported his compensation under the "Consulting Agreement" as ordinary income rather than capital gains. Defendant then argues that if Plaintiff had intended his compensation under the agreement to be nothing more than a part of his sale price, he would have reported such income as a capital gain. This argument carries little weight as to Plaintiff's intent, for the Court is not about to question Plaintiff's reliance on his accountant's advice, or his dealings with the Internal Revenue Service.

were successful, would result in a double recovery of damages, the Court shall DISMISS those claims with prejudice. See Fortuna Corp. v. Sierra Blanca Sales Co., Inc., 548 P.2d 865, 868 (N.M. 1976). The final pretrial conference in this matter set for January 4, 2000, and the jury trial set for January 31, 2000, are hereby canceled, and their settings vacated. Judgment shall enter accordingly.

    SO ORDERED.

    Entered for the Court
this 13th day of December, 1999

    Bobby R. Baldock
United States Circuit Judge
Sitting By Designation